**Janey JORDAN,**

v.

**Betty Jean and Carlton JACKSON, Appellants**

v.

**W.H.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2005.

Filed June 2, 2005.

Andrew D. Glasgow, Pittsburgh, for appellants.

Janey Jordan, appellee, Pro Se.

Before: FORD ELLIOTT, ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Betty Jean and Carlton Jackson, paternal grandmother and step-grandfather, respectively,[1] of W.H., Jr., born January 1,

---

1. For simplicity, we refer to appellants as "grandparents" or "appellants."

1998, appeal from the June 8, 2004 Order modifying the April 15, 2003 shared custody Order, and awarding mother Janey Jordan primary physical custody of the child, and "substantial partial custody" to grandparents. Record # 27, Trial Court Order, 6/8/04, Mulligan, J., at 1.

¶ 2 The record reveals the following factual and procedural history. Mother was never married to the now-deceased father of W.H., Jr. She has six children to three different fathers. N.T., 6/1/04, at 12. The four oldest children live with their father. *Id.*, at 12–15. Mother's next oldest child, K.Y., born April 2, 1996, although not related to grandparents, lived with them from the time he was 19 months old, i.e., early 1998, until he was six and one-half years old, i.e., late 2002. Mother has since regained custody of K.Y. *Id.*, at 63–64. At issue in the underlying action, is mother's petition in which she sought primary custody of W.H., Jr. the youngest of her six children.

¶ 3 According to grandfather, mother asked grandparents to take the child while she was still at the hospital just days after the child's birth in January 1998. N.T., 52–55. Grandparents say W.H., Jr. lived with them from the time he was four days old. Mother disputes this. *Id.* The court however, found that grandparents undoubtedly had cared for the child for some time before mother's incarceration. Trial Court Opinion, Mulligan, J., 8/17/04, at 3.

¶ 4 In March 1999, grandmother obtained a Protection from Abuse Order against the child's now-deceased father (grandmother's son). The court granted custody of W.H., Jr. to grandmother as part of that Order. Record # 2, Trial Court Order, Ridge, J., 3/5/99, para. 6.

¶ 5 Mother has an extensive criminal history which includes, *inter alia*, robbery, theft, assault, criminal conspiracy, prostitution, and possession with intent to deliver a controlled substance. N.T., at 16–17. She was arrested at some point in 2000 and was sentenced to ten years in prison for delivery of a controlled substance. She spent only approximately one year in jail and was released for parole on March 11, 2002. *Id.*, at 21. At that time she was released to an intermediate program, and was ultimately released in June 2002. *Id.*, at 25–26. It is undisputed that the child lived with grandparents while mother was in jail. *Id.*, at 5, 20, 55. In fact, the record is clear that during this period of time both K.Y. and W.H., Jr. lived with appellants.

¶ 6 On March 7, 2002, a few days prior to mother's release from jail, grandparents filed a complaint for confirmation of custody. Record # 3. The court entered an Order that same day granting confirmation of primary custody of the child to grandparents. Record # 3, Trial Court Order, Kaplan, J., 3/7/02.

¶ 7 On August 22, 2002, mother filed a complaint for primary custody of the child. Record # 5. The complaint was denied because it was contested, but the court granted mother partial custody "as grandparents agree." Record # 5, Trial Court Order, 8/22/02, Eaton, J.

¶ 8 The parties completed the Generations program and were scheduled for conciliation, but the parties failed to reach an agreement. Record # 8, 9. A hearing, therefore, was scheduled on mother's petition. Record # 10. Ultimately, the court entered an April 15, 2003 Order granting shared custody of both W.H., Jr. and K.Y. Record # 13, Trial Court Order, Mulligan, J., 4/15/03.

¶ 9 On September 18, 2003, mother filed a petition for modification of the April 15, 2003 custody Order, seeking primary custody of W.H., Jr. Record # 16. Among her reasons for requesting the change

were that alternating weekdays were difficult with the child in first grade; she wasn't receiving custody on alternating weekends as the court had ordered; and, the child was not developing appropriately. *Id.*

¶ 10 The court ordered that home evaluations be prepared for both parties, and scheduled a June 1, 2004 hearing on mother's petition. Record # 20, 23. Following the hearing, the court entered the June 8, 2004 Order from which appellants filed this appeal. In that Order, the court granted mother primary custody, but awarded "substantial partial custody" to grandparents. Record # 27, Trial Court Order, 6/8/04, Mulligan, J., at 1. The award of primary custody to mother was contingent upon mother authorizing New Foundations Supportive Housing Authority Program[2] and Wilkinsburg Family Support Center, two programs with which she is involved, to contact Children and Youth Services (CYS) of any indications of mother relapsing into criminal activity. *Id.*, at 1–2. The court also ordered that grandparents could, at their own expense, obtain random blood tests of mother to ensure she is drug-free. *Id.*, at 2.

¶ 11 In its Opinion filed pursuant to Pa.R.A.P.1925, the court explained its reasoning for its decision. It recognized that it must determine what is in the best interests of the child, and also recognized that as to third parties, parents have a "prima facie right to custody" which will be forfeited only if "convincing reasons"

appear that the child's best interest will be served by an award of custody to the third party. Trial Court Opinion, at 5–6, *citing Charles v. Stehlik*, 560 Pa. 334, 744 A.2d 1255, 1258 (2000). The court found there was insufficient evidence to "tip the scales in the direction of grandparents." Trial Court Opinion, at 6. The court also recognized the preference of the law in this state of keeping siblings together where possible. *Id.*, *citing Albright v. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980).

¶ 12 Grandparents filed this timely appeal in which they raise the following questions:

I. Whether the Lower Court abused it discretion by granting primary custody of the child to Jordan/mother.

II. Whether Jordan/mother failed to meet her burden of proof as a moving party in a custody modification proceeding.

III. Whether the Lower Court was serving the role of the Court.

IV. Whether the Lower Court should have required Jordan/mother to provide medical or psychological evidence.

V. Whether the Lower Court gave adequate weight to the status quo.

VI. Whether the Lower Court should not have permitted two of Jordan's/mother's witnesses to testify.

Appellants' brief at 4.[3] We address these issues *seriatim*.

**2.** It appears from the record that the New Foundations Supportive Housing Program and Hosanna House are parts of the same housing program. The Housing Evaluation refers to a *Laschelle Chapman* of the New Foundations Supportive Housing Program, as the mother's case manager in the housing program she entered in April 2003 and had supplied the home in which mother resided as of May 18, 2004. Exhibit A, Home Evalua-

tion Report, at 5. The transcript indicates that as of the June 1, 2004 hearing, mother's housing case manager was *Michele Chapman* who works through Hosanna House. N.T., 6/1/04, at 112.

**3.** Mother, *pro se*, filed a letter stating she agreed with the court and would not file a brief.

¶ 13 We apply a well-settled standard to our review of child custody cases.

> On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> "Further, on the issues of credibility and weight of the evidence, we defer to the findings of the trial judge." Additionally, "appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record."

*Arnold v. Arnold,* 847 A.2d 674, 677 (Pa.Super.2004) (citations omitted).

¶ 14 It is axiomatic that the paramount concern in a child custody case is the best interest of the child, based upon a consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being. *See id.* In the case of a custody challenge by a third party,[4] however, this analysis is "weighted." *See K.B. v. C.B.F.,* 833 A.2d 767, 776 (Pa.Super.2003).[5]

> In a custody contest between two biological parents, "the burden of proof is shared equally by the contestants...." Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side."

*Id.,* at 771, *citing Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255 (2000).[6] "What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa.Super.2000), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001), *citing, Ellerbe v. Hooks,* 490 Pa. 363, 367–368, 416 A.2d 512, 513–514 (1980). These principles "do not pre-

---

4. "For purposes of a custody dispute, persons other than the natural parents are considered [to be] 'third parties.'" *McDonel v. Sohn,* 762 A.2d 1101, 1105 (Pa.Super.2000), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001).

5. Our Supreme Court granted appeal on the limited issue of whether grandparents have standing to seek custody under 23 Pa.C.S.A. § 5313(b) absent a finding that the child is substantially at risk, or that the parent is unfit, or that the child is dependent. *K.B. v. C.B.F.,* 577 Pa. 135, 842 A.2d 917 (2004).

6. Our Supreme Court in *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980), adopted the presumption that parents have a *prima facie* right to custody as against third parties. In *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995), a plurality of the Court would have abandoned this presumption in favor of a standard which considers parenthood "a factor of significant weight." *Id.,* at 448, 668 A.2d at 128. As *Rowles* was a plurality, however, the presumption remains in effect. *See B.A. v. E.E.,* 559 Pa. 545, 549, 741 A.2d 1227, n. 1 (1999); *see also, McDonel, supra,* at 1107–1108.

clude an award of custody to the non-parent. Rather, they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." *McDonel*, at 1107, *citing, Ellerbe*, at 368, 416 A.2d at 514.[7]

¶ 15 Appellants' first argument is that the court erred in that the child's best interests are served by continued shared custody between the parties and not by primary custody in mother. Cognizant of the applicable scope and standard of review, and the above principles of law, we have conducted a thorough review of the court's findings in this regard.

¶ 16 We initially express our disagreement with the trial court that "[t]he focus on this case was not the quality of the relationships or the mental health of the parties, but rather, whether Mother had sufficiently rehabilitated to assume custody." Trial Court Opinion, at 8. Whether mother had rehabilitated is certainly very pertinent to whether the grant of custody to mother was in the child's best interest, but it was not the "focus of the case." We also express our concern with a statement of the trial court which appears in the June 15, 2004 Order from which appellants appeal:

> In light of mother's evidence of rehabilitation, the evidence that the child is doing well when in mother's care, *and the lack of evidence that placing primary custody of this child with mother would result in a serious detriment to the child*, given the law with respect to custody disputes between natural parents and third parties, it is appropriate to award primary custody to mother in this situation.

Record # 27, Trial Court Order, 6/15/04, Mulligan, J., at para. 2 (emphasis supplied). We reiterate that at issue, and certainly the focus of the case, is the best interest of the child and, in a case such as this, in which a third party challenges the grant of custody to a parent, the third party bears the burden of proof and persuasion that convincing reasons exist such that an award of custody to the third party is in the child's best interest. *See K.B., supra.*

¶ 17 The trial court did consider factors pertinent to the child's best interests. Specifically, the court noted that mother has maintained employment, has passed drug and alcohol screenings since her release from prison, and has participated in parenting and educational classes through the Hosanna House housing program. Trial Court Opinion, at 2–3; *see also* N.T., at 35, 112–117. We note that mother's participation in the housing program includes monitoring of her housekeeping, parenting, and budgeting. N.T., 112–113. Mother's case manager in the program testified she is doing very well and she feels mother no longer needs the intensive program. Trial Court Opinion, at 3; *see also* N.T., at 112–113.

¶ 18 Although grandparents have made several allegations that mother has continued to use drugs and alcohol, and continued to engage in criminal activity, including an allegation that mother was on the street banging on cars as they passed by and yelling profanity, those allegations were determined to be unfounded. Trial Court Opinion, at 2; N.T., at 36–38.

¶ 19 The court also noted that the child attends an after school program at the Wilkinsburg Family Support Center on days when he is in mother's custody. Tri-

---

7. We address *infra* grandparents' argument that the presumption in favor of the natural parent applies in the context of initial custody filings but not, as here, in the case of a custody modification.

al Court Opinion, at 4; N.T., at 121. Mother reportedly is very responsive when the Center calls her and mother's case manager at the Center has a very positive impression of mother. Trial Court Opinion, at 4; N.T., at 123–124. The case manager also observed that W.H., Jr. and his brother K.Y., of whom mother has custody, appear to be inseparable and "almost touch constantly" when they are together. Trial Court Opinion, at 4; *see also* N.T., at 122.

¶ 20 The court ordered an evaluation of the parties' respective homes. The evaluation was performed by James DeFilippo and incorporated into the hearing. Trial Court Opinion, at 4. DeFilippo also considered the parties' respective criminal histories, and spoke with mother's parole officer and case manager. Exhibit A, Home Evaluation Report, at 4. DeFilippo opined that the child is well adjusted and that both mother and grandparents provide for W.H., Jr.'s emotional needs. Trial Court Opinion, at 4; Exhibit A, Home Evaluation Report, at 11. DeFilippo found grandparents' house was in need of cosmetic repair and that grandparents needed to dispose of a significant amount of "accumulated junk" which has caused them to lose access to "more than half their house." Trial Court Opinion, at 4–5; Exhibit A, Home Evaluation Report, at 8–9. DeFilippo found mother's home to be in good condition as it is owned by an agency and standards had to be met prior to mother's occupation of the home. Trial Court Opinion, at 5; Exhibit A, Home Evaluation Report, at 9–10. The court noted, however, that mother is required by the housing program to maintain certain standards. Trial Court Opinion, at 5; Exhibit A, Home Evaluation Report, at 9–10; *see also,* N.T., at 117–118.

¶ 21 DeFilippo's main concern is mother's prior drug and criminal history, but the court noted that mother's parole officer and case manager from the housing program believe she has been rehabilitated. Trial Court Opinion, at 5; Exhibit A, Home Evaluation Report, at 10–11; *see also,* N.T., at 112–117. Further the court noted that CYS is closing mother's case since it appears she is no longer using drugs. Trial Court Opinion, at 5; Exhibit A, Home Evaluation Report, at 9–10.

¶ 22 The trial court also noted that grandparents attempted to prove that K.Y.'s academic performance dropped at the time when mother gained custody of him. The record however reveals that W.H., Jr.'s academic performance perhaps declined somewhat in 2003, which coincided with the time when mother was granted partial custody, but his current records at the time of the June 2004 hearing indicated he was doing well academically, performing above the median, and that he was receiving awards for his academic performance. *Id.,* at 70–75.

¶ 23 The trial court also noted that grandparents alleged that the child was dirty when he was returned to grandparents from visits with mother. N.T., at 86. Mother denied this allegation and claims she dresses them appropriately. *Id.,* at 90, 109, 132.

¶ 24 The trial court concluded:

Grandparents 1) voiced concerns regarding the state of Child upon returning from his visits with Mother, 2) testified to an alleged incident of Mother banging on cars and using profane language, and 3) presented evidence of a drop in school performance for [K.Y.] who is now with Mother. These factors are simply not enough to tip the scales in the direction of Grandparents. Mother presented the court with evidence from her probation officer, two case workers, and a Home Evaluation Report, all of which indicate that Mother is

doing extremely well in her rehabilitation. There are no incidents of relapse reported by any of the parties. All reports are that Mother is being open, honest, positive, and staying clean.

Trial Court Opinion, at 6. The court noted there are safeguards in its June 8, 2004 Order in the event mother relapses into criminal activity. Further, as indicated above, the court noted that granting custody of child to mother allows the brothers, K.Y. and W.H., Jr., to be raised together, thereby furthering a "strong policy" of our state. *Id.*, at 6–7.

¶ 25 Our review reveals that the trial court's findings were supported by the record and its conclusions were not "manifestly unreasonable." The court also applied the correct law, i.e., performing a best interest analysis weighted in favor of mother.

¶ 26 Under the law of this Commonwealth, we are compelled to agree with the trial court grandparents did not overcome the presumption in favor of mother by proving convincing reasons that the child's best interests would be served by awarding custody to them. Admirably, it is clear that grandparents have provided a home and have provided emotionally for the child for a significant period of time while mother was unable to do so. We agree with the trial court's intention, as evidenced by its Order that grandparents continue to play an important role in the child's life. All evidence, however, indicates mother has been providing the same since shortly after she was released from jail. She is ready, willing, and able to provide a home, and to provide financially and emotionally for the child. The child has continued to do well academically while the parties have shared custody. He is also close to his brother with whom he will live in mother's home.

¶ 27 The scales were already "tipped hard" for mother that a custody award in her favor is proper and serves the child's best interests. In sum, there is simply a dearth of evidence that his interests are better served in grandparents care, and that was grandparents' burden to prove. Grandparents simply have provided insufficient evidence upon which we can disturb the trial court's Order.

¶ 28 Grandparents' next argument is that mother failed to meet her burden of proof as a moving party in a custody modification proceeding. Their argument is really two-fold. First, they contend mother had to prove there was some change of circumstances such that the child's best interests would be served by an award of custody in her favor. This argument arises from statements of the law such as the following:

Child custody orders are temporary in nature and always subject to change *if new circumstances affect the welfare of a child.* The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights.

*Arnold v. Arnold*, 847 A.2d 674, 677 (Pa.Super.2004) (citations omitted, emphasis supplied).

It is settled law in Pennsylvania that a custody order is subject to modification *without proof of substantial change in circumstances* when it is shown that change is in the best interests of the child. Whenever a court is called upon to address the best interests of a child, traditional burdens or presumptions such as substantial change in circumstances, the fitness of one parent over another, or the tender years doctrine must all give way to the paramount concern; the best interests of the child. In

determining best interests of the child, a court must consider all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Clapper v. Harvey,* 716 A.2d 1271, 1273 (Pa.Super.1998) (citations omitted).

¶ 29 Case law makes excruciatingly clear that *of paramount importance* in child custody cases is the best interest of the child. Certainly, courts of this Commonwealth must not decline to enter a custody Order which would serve the best interests of a child simply because the moving party did not sufficiently prove a change in circumstances. Often there will be a change in circumstance which prompts the moving party to petition the court. That is the case here, where mother was released from jail in 2002 and since then has been working towards gaining custody of her two youngest children. The trial court committed no error by not requiring mother to explicitly prove such a change in circumstances before it entered an Order which it found served the best interests of W.H., Jr.

■■■ ¶ 30 Grandparents also argue the presumption in favor of the parent did not apply here because this case was not an initial custody filing but rather a modification. Grandparents assert that they are not third parties trying to acquire custody from a biological parent, but rather they already have custody rights pursuant to a prior Order. They claim it "makes *no* sense" to apply the doctrine of a *prima facie* right to custody in modification proceedings between a parent and non-parent custodian. Appellants' brief at 20. We note appellants cite no legal authority for their position and that our research reveals appellants' contention lacks merit.

¶ 31 In *Walkenstein v. Walkenstein,* 443 Pa.Super. 683, 663 A.2d 178 (1995), after mother was involuntarily committed into a psychiatric hospital, the divorced grandparents petitioned for and were granted joint custody of the child. *Id.,* at 179. After mother was discharged from the hospital and successfully rehabilitated herself, she sought primary custody of her son. *Id.,* at 179–180. The court granted grandmother primary physical custody and mother partial physical custody. *Id.,* at 180. Mother appealed; she argued, *inter alia,* that the court erred in concluding she did not have a *prima facie* right to custody in her child. *Id.,* at 180. The trial court in *Walkenstein* did, in fact, require that grandmother carry the burden of proof by clear and convincing evidence. *Id.,* at 181. On review, this Court recognized the presumption applicable in custody disputes between parents and non-parents, and we found the trial court properly applied that presumption. *Id.* In *Walkenstein,* as here, the grandparents had been granted custody by court Order, and mother sought to modify that Order. We found the presumption in favor of the natural parent was applicable. Accordingly, we must reject appellants' argument on this issue.

■■■ ¶ 32 Next, grandparents question whether the trial court was "serving the role of court" and exhibited bias towards mother. Appellants' brief at 21–22. They first complain the court acted as counsel for mother when it put mother's witnesses on the stand and engaged in direct examination of them; asked mother whether she wanted to ask questions of the witnesses or whether she wanted the court to do so; limited grandparents' testimony of mother's criminal history and records; limited grandparents' testimony as to W.H., Jr.'s and K.Y.'s educational records; and interrupted grandparents' closing argument. Appellants' brief, at 22. We note

[a] trial judge has the right if not the duty to interrogate witnesses in order to clarify a disputed issue or vague evi-

454

dence. Unless the complaining party can establish the judge's questioning constituted an abuse of discretion, resulting in discernible prejudice, capricious disbelief, or prejudgment, a new trial will not be granted.

*Mansour v. Linganna*, 787 A.2d 443, 446 (Pa.Super.2001), *appeal denied*, 568 Pa. 702, 796 A.2d 984 (2002) (citation omitted). In exercising its prerogative in this regard, the trial court cannot unduly protract testimony or show bias. *Carney v. Otis Elevator Co.*, 370 Pa.Super. 394, 536 A.2d 804, 807 (1988). A thorough reading of the transcript reveals that mother's decision to proceed *pro se* resulted in a challenging situation for the trial court. It is clear to this Court that the trial court had the duty to question the witnesses as it did in order to extract/clarify information it needed to make a decision as to the best interests of the child. We see no evidence of bias. In any event, grandparents, as the complaining party, have not met their burden of establishing that the judge's questioning constituted "an abuse of discretion, resulting in discernible prejudice, capricious disbelief, or prejudgment." *See Mansour*, at 446.

¶ 33 Grandparents' arguments as to the court limiting their testimony and interrupting their closing arguments are utterly undeveloped and we will therefore not address them. *See Shepp v. Shepp*, 821 A.2d 635, 639 (Pa.Super.2003) (holding that a failure to advance any argument or cite any supporting authority on a subject enables us to deem the issue waived). We simply note that we are able to discern no evidence of bias on the court's behalf.

■■■■ ¶ 34 Grandparents also argue the court exhibited partiality in favor of mother when it excused mother's failure to submit, within ten days prior to trial, a written statement summarizing the testimony of her witnesses, in contravention of

the court's March 10, 2004 Order, *see* Record # 23, and then permitting her witnesses from the housing program and from the Wilkinsburg Family Support Center to take the stand. *See* N.T., at 47–49; *see also* Trial Court Opinion, at 9. The court explained its decision as follows:

The attorney who was representing Grandparents on March 10, 2004 withdrew his appearance and present counsel entered his appearance on April 19, 2004. The third party witnesses stated that since prior counsel was no longer representing Grandparents, they did not know whom to send the summary to. Although mother, who was appearing *pro se*, should have forwarded a summary to the Grandparents directly if she did not know the identity of the attorney, I found that the failure of mother to comply with the pretrial Order did not prejudice grandparents. The evidence presented by third party witnesses was primarily about their involvement with mother and her compliance with treatment and did not involve Grandparents. "It is the duty of the trial judge to make the fullest possible inquiry in custody actions. All pertinent facts and circumstances surrounding the contesting parties must be fully explored and developed." [*Moore v. Moore*, 535 Pa. 18, 27, 634 A.2d 163, 167 (1993)]. Thus it was necessary to hear testimony from Mother's witnesses to determine the extent of Mother's rehabilitation. The testimony of the witnesses allowed a thorough and proper inquiry into the "facts and circumstances" of the case.

Trial Court Opinion, at 9 (footnotes omitted).

■■■■ ¶ 35 "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial

court upon a showing that it abused its discretion or committed an error of law." *B.K. v. J.K.*, 823 A.2d 987, 991–992 (Pa.Super.2003). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused." *Doherty v. Doherty*, 859 A.2d 811, 812 (Pa.Super.2004). We find no abuse of discretion in the trial court's ruling, and we agree it was necessary to hear the testimony in order to explore "[a]ll pertinent facts and circumstances surrounding the contesting parties." *See Moore, supra.*

¶ 36 As to grandparents' argument that the court exhibited partiality when it excused mother from making a closing argument, we note this argument too is undeveloped and therefore waived. *See Shepp, supra.* We note though that after counsel for grandparents made his closing arguments, the court simply stated to *pro se* mother that it believed it understood her position and that a decision would be forthcoming. N.T., at 148. The court concluded with an admonishment to both parties that they need to stop fighting and start working together for the benefit of the child. The court recognized that both parties love the child and the child loves both parties. We find no evidence of partiality.

¶ 37 Grandparents also contend that the court's alleged partiality prevented it from ordering a psychological evaluation prior to the hearing in this matter. As authority, grandparents cite only a local rule of Allegheny County to the effect that "custody cases which are not resolved by DRO's *may be referred by the DRO* for psychological evaluations...." Appellants' brief at 23 (emphasis supplied). They also cite Pa.R.C.P.1915.8, Physical and Mental Examination of Persons, (a), as authority that "the court upon its own motion *may* order a party to submit to an evaluation..." Appellants' brief at 24 (emphasis supplied); *see also* Pa.R.C.P. 1915.8(a). It is clearly within the court's discretion whether to order an evaluation. The court explained that it did not order an exam in this case because, *inter alia*, "[t]here appeared to be a consensus that the child was bonded to both Mother and Grandparents," and that the court "did order a Home Evaluation which addressed the concerns and questions raised by Grandparents." Trial Court Opinion, at 8. We reiterate "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused." *Doherty, supra*, at 812. We find no basis upon which to hold the court abused that discretion in declining to order a psychological exam in this case.

¶ 38 Appellants' next issue raised on appeal is that the court should have required mother to provide "medical or psychological evidence" as to her rehabilitation. Appellants' brief at 24. They cite no legal authority whatsoever in support of their argument and so this issue is waived. *See Shepp, supra.* We reiterate, however, that Pa.R.C.P.1915.8(a) provides the court discretion as to whether to order the child "or a party" to submit to an evaluation by an appropriate expert. Pa.R.C.P.1915.8. The court heard the testimony of mother's parole officer, and two of her case managers, as to her progress. We find no abuse of discretion.

¶ 39 Appellants' next issue on appeal is that the court did not give adequate weight to the status quo. Appellants' brief at 26. We have already found that the

court applied the correct standard to its disposition of this matter, i.e., that which our Supreme Court adopted in *Ellerbe v. Hooks,* 490 Pa. 363, 367–368, 416 A.2d 512, 513–514 (1980), and which has remained good law. *See, e.g., K.B. v. C.B.F.,* 577 Pa. 135, 842 A.2d 917 (2004); *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255 (2000); *McDonel v. Sohn,* 762 A.2d 1101, 1105 (Pa.Super.2000), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001).

¶ 40 Finally, grandparents argue that the court erred in permitting two of mother's witnesses to testify where mother failed to comply with the court's March 10, 2004 Order which required the parties to submit within ten days of the hearing a summary of the testimony of any third-party witnesses. We addressed this same allegation, *supra.*

¶ 41 In closing, we note that we are reminded of the case of *Burnett v. Verstreate,* 742 A.2d 700 (Pa.Super.1999), in which the grandparents similarly had cared for their grandchild. We repeat comments this Court made in *Burnett,* which are equally applicable here:

> [The grandparents'] care of the child was all that could be wished, however, that alone cannot be the determining factor in this case. If such were the case, no parent who is out of custody, regardless of the reformation and improvement in lifestyle or parenting ability, could obtain the return of custody. The record supports the trial court's belief in the mother's redemption and also mandates she be given the opportunity to exercise her right as a parent . . .

*Id.,* at 703.

¶ 42 Order affirmed.