## Grannis v. Lopez

*Joseph J. Kearney,* for plaintiffs.
*Mark Krochka,* for defendants.

HODGE, *J.,* January 8, 2007—Before the court is an emergency petition for special relief, filed by James Grannis Sr. and Ginger Grannis, (grandparents), versus Stacey Grannis Lopez (Mother) and Shawn Michael Trott (Father).

The background of this case is as follows. The minor child, [    ], was born March 23, 2002, out of wedlock, to Stacey Grannis Lopez and Shawn Michael Trott. The parents were never married, and the mother is now married to Peter Lopez IV.

The plaintiffs, James Grannis Sr. and Ginger Grannis, husband and wife, are the maternal grandparents of the minor child.

The testimony established that on or about February 23, 2006, the natural mother, Stacey Grannis Lopez, signed an authorization and consent granting temporary guardianship of the minor child to her parents. See petitioner's exhibit no. 1. The mother's testimony at the hearing was to the effect that she was having legal and drug problems at the time, and wanted her parents to be able to transport the child to Head Start and to the doctor until such time as she resolved her problems.

After delivering the child to her parents in February of 2006, the mother saw the child on a sporadic or intermittent basis until late May of 2006.

The natural father has had very little contact, if any, with the minor child. While present for the hearing, he is currently incarcerated in the Lawrence County Jail, and has had virtually no relationship with the minor child nor interest in these proceedings.

The respondent/natural mother produced a letter from Discovery House, a methadone clinic located in Cranberry Township, Pennsylvania. See respondent's exhibit no. A. She has been a client at that facility since May 22, 2006, where she has been required to submit to

at least one random drug test monthly. She has been abstinent from illegal drugs since at least May 22, 2006.

Subsequent to May 22, 2006, the mother has seen the minor child on a regular basis, on alternate weekends, until the Christmas holiday of 2006. The mother's explanation as to why she was denied contact with her daughter over Christmas vacation is that her parents are upset that she married Mr. Peter Lopez on December 16, 2006. On December 25, 2006, the mother had contacted her parents and believed she had made telephone arrangements for her to see the child that evening from 7 p.m. until 9 p.m. However, that visitation did not come off and the mother contacted the Pennsylvania State Police to assist her in obtaining her child. Despite the efforts of the Pennsylvania State Police on Christmas evening, the mother did not have contact with her child. On December 26, 2006, with the assistance of the Pennsylvania State Police, the mother was able to obtain custody of her child.

On January 2, 2007, the plaintiff/grandparents filed an emergency petition for special relief, alleging that the defendant/mother had granted them temporary guardianship of the minor child pursuant to the document of February 3, 2006, being petitioners' exhibit no. 1, and also alleging that the minor child was substantially at risk in the custody of the mother, in that the mother and her new husband, Peter Lopez IV, have been known to abuse illegal drugs and substances, that they have neglected the welfare of the minor child; that the natural mother has sold all the minor child's belongings in order

to purchase illegal drugs; that the mother has sold food stamps, jewelry, and furniture in order to purchase illegal drugs, that she has participated in criminal activity in order to fund her illegal drug use; and that she is currently on probation for said activities. In addition, petitioners allege that the minor child is not being provided with adequate food or shelter and that she may be in an abusive environment.

Grandparents have legal standings to file a petition for custody pursuant to the provisions of 23 Pa.C.S. §5313(b), which provides that a grandparent has standing to bring a petition for physical and legal custody of a grandchild, and the court may grant custody of a child to a grandparent, if it is in the best interest of the child to be in the custody of the grandparent, when the grandparent provides proof of the following:

"(1) a genuine care and concern for the child;

"(2) a relationship with the child beginning with the consent of a parent of the child or pursuant to an order of court; and

"(3) a grandparent assumes or deems it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or mental illness."

The court is satisfied that the plaintiffs/grandparents meet the requirements of 23 Pa.C.S. §5313(b), in that the grandparents' testimony at the hearing showed that they have a genuine care and concern for the child; their relationship with the child began with the consent of the parent of the child (petitioners' exhibit no. 1); and the

grandparents assumed or deemed it necessary to assume responsibility for a child due to the admitted drug abuse of the natural mother.

However, while the court believes that the plaintiffs/petitioners/grandparents have legal standing to pursue custody of the minor child, the court is not satisfied that the plaintiffs met their burden of proof on the emergency petition for special relief. The testimony of the plaintiffs was related to incidents which occurred almost a year ago, if not more, prior to the date of the hearing in this matter. The grandparents did not substantiate their allegations in the emergency petition relative to current abuse of illegal drugs, neglect of the welfare of the minor child, allegations of sale of the child's belongings, allegations of sale of food stamps, jewelry, and furniture to purchase illegal drugs, by the mother.

To the contrary, the mother's testimony was that she has been clean from drugs and has not used any illicit drugs since May 22, 2006. In addition, the evidence presented by the mother relative to the condition of her home, see respondents' exhibit A consisting of a compilation of 24 photographs, satisfies the court that the mother has adequate facilities and food to provide appropriate care for the minor child.

The paramount concern in a child custody case is the best interest of the child, based upon a consideration of all factors that legitimately effect the child's physical, intellectual, moral and spiritual well-being. In the case of a custody challenge by a third party (grandparents), however, this analysis is "weighted". See *K.B. v. C.B.F.,* 833 A.2d 767, 776 (Pa. Super. 2003).

For purposes of a custody dispute, persons other than the natural parents are considered to be third parties. *McDonel v. Sohn,* 762 A.2d 1101, 1105 (Pa. Super. 2000).

In the custody contest between two biological parents, "the burden of proof is shared equally by the contestants . . . ." Yet, when the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, "the parents have a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest would be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side. See *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255 (2000).

The court's obligation is to first hear all evidence relative to the child's best interest, and then decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side. *McDonel v. Sohn,* 762 A.2d 1101, 1105 (Pa. Super. 2000).

The case of *Jordan v. Jackson,* 876 A.2d 443 (Pa. Super. 2005), was a case substantially similar to the facts of our case. In the *Jordan* case, the mother had been incarcerated for a substantial period of time and the grandparents had had custody of the child while the mother was incarcerated and was in drug rehab.

A trial court in *Jordan, supra* at 456, had awarded the mother primary physical custody and, upon appeal by the grandparents, the Superior Court held that the moth-

er was entitled to primary physical custody of the minor child, quoting the case of *Burnett v. Verstreate,* 742 A.2d 700, 703 (Pa. Super. 1999), which is equally applicable here:

"The grandparents' care of the child [is] all that could be wished, however, that alone cannot be the determining factor in this case. If such were the case, no parent who is out of custody, regardless of the reformation and improvement in lifestyle or parenting ability, could obtain the return of custody. The record supports the trial court's belief [and] the mother's redemption and also mandates she be given the opportunity to exercise her right as a parent. . . ."

Upon consideration of the evidence produced in this case, the court is of the opinion that the plaintiffs/grandparents have not met their burden of production and their burden of persuasion, and as such, the court will enter the attached order granting primary physical custody of the minor child to the natural mother.

## ORDER

And now, January 8, 2007, for the reasons set forth in the attached opinion, the court enters the following order:

(1) Primary physical custody and legal custody of the miner child, [    ], is awarded to the natural mother, Stacey Grannis Lopez, subject to the conditions set forth in this order.

(2) The maternal grandparents, James Grannis Sr. and Ginger Grannis, his wife, shall have partial custody rights

of the minor child, every Friday evening from 5 p.m. until Sunday evening at 5 p.m.

(3) Lawrence County Children and Youth Services is hereby directed to monitor the living circumstances in the mother's home, Lot 17, West Wind Village, 195 Windy Drive, Ellwood City, Pennsylvania, or such other place where the natural mother may be residing with the minor child, on no less than a minimum of a monthly basis with a report to the court monthly.

(4) The defendant/mother shall submit to random drug testing through the office of the Lawrence County Adult Probation on a monthly basis, with the Adult Probation Office to determine the dates of the drug testing, and to provide the court with a monthly summary of the drug test.

(5) The parties are extended the privilege by the court upon their mutual agreement to modify the terms of the above-stated custody provisions from time to time as they shall agree are in the best interests of the child.

(6) In any transporting of the minor child, all parties and anyone else involved with such transportation, shall comply with the laws and regulations of the Commonwealth of Pennsylvania including those regarding child safety restraint apparatus in any vehicle used to transport the child.

(7) The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter. Failure to do so may result in sanctions being imposed by the court

upon the offending party including suspension of custody and payment of attorney's fees.

(8) No party shall remove the minor child from the jurisdiction of this court with the intent of changing the physical residence of the minor child without the written consent of the other party or the court.

(9) The parties shall read and fully comply with the provisions of the appendix to custody order which is attached hereto and filed with this order. (not published herein)

(10) The custody conciliation conference scheduled for February 12, 2007, is hereby cancelled as moot. Any further hearing in this case shall be upon motion of counsel.

(11) The prothonotary shall serve notice of this order by regular mail or personal service upon counsel of record; upon Lawrence County Children and Youth Services; and Lawrence County Adult Probation.