J-S66015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| T.B. AND S.E., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| S.H. AND K.W., | |
| Appellees | No. 840 WDA 2015 |

Appeal from the Order entered April 27, 2015,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): 12-000134-001

BEFORE:  OLSON, STABILE, and STRASSBURGER*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 06, 2016**

T.B. ("Father") and S.E. ("Paternal Grandmother") (collectively, "Appellants") appeal from the order entered April 27, 2015, that awarded shared legal custody of Father's female child, T.B. ("Child"), who was born in October of 2009, to Father and K.W., the third-party custodian of Child, ("Custodian").  The order also awarded primary physical custody of Child to Father and partial physical custody to Custodian.  Finally, the order awarded partial physical custody to Paternal Grandmother, as arranged with Father, and partial physical custody to S.H. ("Mother"), as arranged with Custodian.  Although we agree with Appellants that the trial court should have characterized the type of physical custody awarded to Custodian as "shared," and not "partial," we affirm in all other respects the factual and

_____
* Retired Senior Judge assigned to the Superior Court

legal determinations made by the trial court with respect to the custody awards (both legal and physical) entered in this case.

The trial court made the following findings of fact:

Much of the testimony at the hearing focused on establishing the history of Child's custody arrangements between her birth in 2009 and the initiation of litigation, approximately four years later. Although it is undisputed that Child eventually came to live exclusively with Custodian, the parties and witnesses differed considerably in their accounts of how and when this occurred. On balance, both at the time of the hearing itself[,] and[,] after careful review of the transcripts, the [trial court found] the history provided by Custodian and her witnesses credible and more persuasive than Father's version of events. The [trial court] reconcile[d] the various versions of events as follows:

At the time of Child's birth and for a few months thereafter, [Mother, Father,] and Child lived together in Paternal Grandmother's home. When Paternal Grandmother requested that they leave her home, they moved as a family to the home of [J.E., who is Child's paternal great-aunt ("Paternal Great-Aunt")] for a few months. Father and Mother then lived together in an apartment in the Carrick neighborhood of Pittsburgh until [] 2011, when they separated. Mother next moved to an apartment on Brownsville Road. Although Father did not live with Mother there, he did spend time with Mother at that address. In April 2012, Father got involved in a physical altercation with Mother and her boyfriend at the Brownsville Road apartment. Father was convicted of several charges related to that incident and did not involve himself with Mother after that [incident].

Custodian's son, P.W., has been a close friend of Mother's since they were in high school[,] and was well-known to Father. P.W. lives in Custodian's household and served as a frequent babysitter for Child. Starting in the summer of 2010, when Child was approximately nine months old, Custodian also started to provide care for Child in Custodian's home. By the fall of 2010, even though Mother and Father were still residing together, Child was spending the majority of her time in Custodian's care.

- 2 -

Father was aware of these arrangements. Although Father's communications were always with P.W., he knew where Custodian lived. He both picked up and returned Child to Custodian's home when Child was still quite young. He first met Custodian when Custodian dropped off Child for a visit with him at an address on Jucunda Street in Mt. Oliver.

Father occasionally arranged with P.W. to have visits, including some overnights, with Child. Custodian arranged for Child to visit Mother [when] Mother requested it. Because Father remained in some form of relationship with Mother on and off until spring of 2012, Father spent time with Child and provided care for Child when Child was visiting Mother. Although none of the witnesses provided specific dates for Father's visits with Child, Father had the opportunity to bring Child with him to various family events during any of his visits. By Father's own account, he did not see Child at all for approximately [18 months] - from the spring 2012 altercation at the Brownsville Road apartment to the initiation of court proceedings in the fall of 2013.

In or around May 2013, Father, Paternal Grandmother, and the police arrived at Custodian's home. Father was seeking to take custody of Child and may have obtained an emergency PFA order authorizing this [action].[1] Custodian explained to the police that Child resided with her through an informal custody arrangement. The police declined to remove Child from Custodian[,] and informed Father that he should take appropriate action through [the court system]. Paternal Grandmother first became aware of Custodian as a result of this incident.

Following Custodian's initial [c]omplaint for [c]onfirmation of [c]ustody[,] and leading up to the hearing in this matter, the [trial court] ordered Father to participate in reunification counseling with Child[,] and granted Father and Paternal Grandmother increasing periods of partial physical custody with Child. On November 25, 2014, the parties consented to Father exercising two weekly overnight visits and every other weekend

---

[1] Father and Paternal Grandmother referred in their testimony to Father obtaining a PFA [order]. They did not introduce any exhibit to document this, and the [trial court] docket does not reflect the filing of any PFA action by Father.

partial physical custody of Child. That interim order also granted Custodian primary physical custody of Child[,] and granted shared legal custody to Father and Custodian. That custody arrangement remained in effect until the [trial court] issued its final order on April 27, 2015.

Trial Court Opinion, 7/24/15, at 4-7 (certain footnotes omitted).

The trial court set forth the procedural history of this case as follows:

On September 17, 2013, [Custodian] signed and verified a *pro se* [c]omplaint for [c]onfirmation of [c]ustody/[c]omplaint for [c]ustody in which she alleged [] Child had resided with her for three years[,] and that she needed a custody order to establish her authority to get Child vaccinated and enroll Child in pre-school. . . .

On October 17, 2013, the day before Custodian was to present her pleading in motions court, Father filed a complaint seeking custody of [] Child. At motions court on October 18, 2013, the presiding judge denied Custodian's request to confirm custody, granted Custodian *in loco parentis* standing, granted Custodian interim primary physical custody and Father interim partial physical custody, and ordered the matter to proceed through the [trial court's g]enerations custody program.[2] The parties could not reach an agreement through mediation[,] and proceeded to a series of judicial conciliations.

On July 17, 2014, the [trial court] granted a motion allowing [ ]Paternal Grandmother[] to intervene as a party and file a complaint for partial physical custody of Child. Per that order, Paternal Grandmother filed her complaint on July 31, 2014, and the [trial c]ourt consolidated that action with Father's and Custodian's complaints. Given the advanced stage of litigation, the [trial c]ourt excused Paternal Grandmother from participation in [g]enerations[,] and formally included her in the parties' ongoing judicial conciliations.

---

[2] This matter was assigned to [Judge Eleanor L. Bush] in 2014, after the previous judge completed his appointed term and [Judge Bush] began [her judicial service].

- 4 -

The parties could not reach an agreement on a final custody arrangement through judicial conciliations, and the [trial court] scheduled the matter for a hearing.

Trial Court Opinion, 7/24/15, at 1-3.

A custody hearing was held on February 5 and March 30, 2015. At that hearing, the following individuals testified: Father; Custodian; Paternal Great-Aunt; Paternal Grandmother; Custodian's friend, V.S; Custodian's mother, B.W.; Mother; Custodian's son, P.W.; and the executive director of Anchorpoint Counseling Ministry, Ron Barnes. On April 10, 2015, the trial court issued oral findings of fact and conclusions of law related to the 16 custody factors set forth in 23 Pa.C.S.A. §5328(a). On April 27, 2015, the trial court awarded shared legal custody of Child to Father and Custodian. The trial court also awarded primary physical custody of Child to Father, partial physical custody to Custodian, and partial physical custody to Mother and Paternal Grandmother. The order established a schedule for Father and Custodian to exercise their periods of physical custody. The order further provided for Mother to arrange her periods of partial physical custody with Custodian, and for Paternal Grandmother to arrange her periods of partial physical custody with Father. This timely appeal followed.[3]

Appellants present two issues for our review:

---

[3] Appellants filed a concise statement of errors complained of on appeal contemporaneously with their notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). On July 24, 2015, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in their concise statement.

- 5 -

1. Did the trial court commit an error of law and/or abuse its discretion by granting a non-biological third-party shared legal and physical custody of [C]hild?

2. Did the trial court commit an error in not fashioning separate [custody] time for Paternal Grandmother in the final [o]rder?

Appellants' Brief at 2.

In custody cases, our standard and scope of review are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard [of review] is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.S. v. T.T.*, 113 A.3d 1254, 1257 (Pa. Super. 2015), *appeal denied*, 117 A.3d 298 (Pa. 2015) (citation omitted).

We have stated:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 208 (Pa. Super. 2015) (citation omitted).

With any custody case, the paramount concern is the best interest of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Upon petition, a trial court may modify a custody order if it serves the best interest of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. **See S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014). Section 5323 provides for the following types of custody awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.
>
> (7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5322 defines the relevant forms of custody as follows:

> **"Legal custody."** The right to make major decisions on behalf of the child, including, but not limited to, medical, religious[,] and educational decisions.

* * *

**"Partial physical custody."** The right to assume physical custody of the child for less than a majority of the time.

**"Physical custody."** The actual physical possession and control of a child.

**"Primary physical custody."** The right to assume physical custody of the child for the majority of time.

* * *

**"Shared legal custody."** The right of more than one individual to legal custody of the child.

**"Shared physical custody."** The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

**"Sole legal custody."** The right of one individual to exclusive legal custody of the child.

**"Sole physical custody."** The right of one individual to exclusive physical custody of the child.

23 Pa.C.S.A. § 5322.

Section 5328(a) outlines the following best interest factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

- 8 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Although a trial court must consider all of these factors, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013).

Appellants first contend that the trial court committed an error of law and/or abused its discretion by effectively granting Custodian shared legal and physical custody of Child. Section 5327(b) provides:

> In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

23 Pa.C.S.A. § 5327(b).

In its Rule 1925(a) opinion, the trial court discussed the section 5327(b) presumption in depth. It held that Custodian failed to prove by clear and convincing evidence that she should receive primary physical custody. For that reason, the trial court granted primary physical custody to Father. On the other hand, the trial court found that Custodian proved by clear and convincing evidence that she should have partial physical custody of Child.

Appellants concede that the trial court recited the proper legal standard, including the statutory presumption. Appellants' Brief at 7. They

take issue, however, with the trial court's characterization of the type of physical custody awarded to Custodian. Appellants contend that the trial court, in effect, awarded Custodian "shared" (not "partial") physical custody. They assert that the schedule in the order reflects a standard week on/week off shared physical custody schedule as between Father and Custodian. *Id.* Furthermore, they contend that although the trial court recited the correct legal standard, it in fact applied a less stringent standard when awarding Custodian custody.

Although we conclude that the trial court erred in characterizing the nature of the physical custody awarded to Custodian, we conclude that this error was harmless and had no impact upon the presumption that favors parents over third parties in custody disputes or the court's analysis of Child's best interest. While the trial court awarded Custodian "partial" physical custody of Child, the record reveals that Custodian was granted custody of Child for approximately 24 weeks a year, or 46% of the year. "[S]hared custody does not necessarily mean equal time." *V.B. v. M.L.T.B.*, 467 A.2d 880, 883 (Pa. Super. 1983).[4] Instead, all that is necessary for shared legal custody is for more than one person to enjoy "significant periods of physical custodial time with the child." 23 Pa.C.S.A. § 5322(a).

---

[4] We recognize that the statute in effect at the time of *V.B.* differs from the statute currently in effect. Nonetheless, the plain language of section 5322 indicates that the General Assembly codified the rule set forth in *V.B.* when it passed section 5322(a)'s definition of shared legal custody.

Custody of Child for 46% of the year is a significant period. The trial court is correct that it awarded primary physical custody to Father; however, that does not foreclose the possibility of shared physical custody also being awarded to another party. That is what occurred in this case. The trial court awarded shared physical custody to Custodian while awarding primary physical custody to Father. Nonetheless, we conclude that careful review of the trial court's consideration of the section 5328(a) factors supports the trial court's decision to award Custodian shared physical custody.

As to the first factor, the trial court found that "Custodian acknowledges the importance of encouraging Child's relationships with Mother, Father, and Paternal Grandmother." Trial Court Opinion, 7/24/15, at 10. On the other hand, the trial court found that "Father and Paternal Grandmother profess to recognize Child's love for and attachment to Custodian, yet deny the importance to Child of maintaining her relationship with Custodian." *Id.* at 11. Thus, the trial court concluded that the first factor weighed heavily in favor of Custodian. The trial court found that factors two and 2.1 were not applicable in this case. As to the third factor, the trial court found that since "Father was re-introduced to Child in fall 2013, he has performed a typical range of parental duties during the time Child spends with him." *Id.* at 9.

As to the fourth factor, the trial court found:

Child has lived [] with Custodian for most of her life. Custodian and her household represent the main source of stability that

Child has experienced. During Child's lifetime Father has moved numerous times, changed jobs frequently, engaged in physical violence in his relationship with Mother, and admitted to being entirely absent from Child's life for [one and one-half] years.

*Id.* at 10. Therefore, the trial court found that the fourth factor weighed heavily in favor of Custodian. As to the fifth factor, the trial court noted that Father has extended family in the area, *e.g.*, Paternal Grandmother, who would be able to help when necessary.

The trial court weighed factor six in favor of Father because Child has an older half-sibling, who is Father's daughter. As to the seventh factor, the trial court found Child too young for it to consider her preference. The trial court also found that there was no evidence that the parties had attempted to turn Child against another party, so factor eight was neutral. Regarding "factors nine and ten . . . the evidence did not establish that Father is more likely to meet Child's needs. However, the evidence did not establish that he cannot meet these needs." *Id.* (emphasis removed). With regard to factor 11, the trial court found that the parties lived in very close proximity, which is positive for Child. The trial court found that "regarding factor 12, . . . Father's family members can assist him by providing care for Child if Father is at work or unavailable." *Id.*

With regard to factor 13, the trial court found that Custodian showed a slightly more positive attitude toward cooperation than Father. With regard to factor 14, the trial court found that there is a history of drug use on both Father's and Custodian's sides. The trial court found that P.W., who lives

with Custodian, is in recovery and that he has been "clean" of drug use for a few years. The trial court also noted that Father has a history of marijuana use, which may have included the sale of drugs. Accordingly, the trial court did not weigh the factor against either Father or Custodian. The trial court found factor 15 neutral. Finally, the trial court did not find any other relevant factors.

Appellants first dispute the trial court's evaluation of factors 2 and 14. Specifically, Appellants argue that, because Child shares a room with P.W. at Custodian's residence, she is vulnerable to abuse. The trial court, however, carefully considered this issue and found that the current arrangement was temporary and that Child would have her own bedroom shortly. It further found that Child was not vulnerable to abuse because of the current arrangement. Our review of the record indicates that the trial court's findings were supported by the record. Children and Youth Services examined the arrangement (with Child and P.W. sharing a bedroom) and determined that it did not pose a threat to Child.[5]

With respect to factor 14, Appellants argue that P.W.'s past drug use was overlooked by the trial court. The trial court, however, fully discussed P.W.'s past drug use. It found P.W.'s testimony regarding his sobriety to be

---

[5] In their brief, Appellants argue that Children and Youth Services' review occurred before the current arrangement; however, we find that the trial court's evaluation of the testimony regarding the Children and Youth Services' review is consistent with the testimony given at the hearing.

- 14 -

credible. Furthermore, the trial court found that Father had drug problems that were at least as serious as P.W.'s. The trial court noted that Father may have been involved in the illegal sale of drugs. Thus, it found that factor 14 was neutral because both Father and P.W. had past drug problems. As the record supports the trial court's evaluation of the second and fourteenth factors, we may not make our own credibility determinations and reach different conclusions as to those factors.

When weighing the section 5328(a) factors, the trial court found the factors that weighed in favor of Father were far less important than the factors that weighed in favor of Custodian. Specifically, as mentioned above, the trial court found the first and fourth factors to be the most important in its best interest determination and both of those factors weighed in favor of Custodian. The trial court's decision to award Father primary physical custody of Child was based on a combination of the section 5327(b) presumption and the section 5328(a) factors.

Appellants rely on **_Jordan v. Jackson_**, 876 A.2d 443 (Pa. Super. 2005), in support of their argument that the trial court abused its discretion in awarding Custodian shared physical custody. **_Jordan_**, however, is easily distinguishable from the case at bar. Specifically, in **_Jordan_** there was "a dearth of evidence" that the child's interests were best served in the third-party's custody. **_Id._** at 452. As noted above, in this case there was

significant evidence, specifically with respect to the first and fourth factors, that Child's interests were best served in Custodian's care.

The trial court's weighing of the section 5328(a) factors was not unreasonable. Instead, the trial court's findings are well-supported by the record and indicate a great deal of consideration of Child's best interests. As noted above, the trial court's characterization of its physical custody award was legally incorrect. Nonetheless, notwithstanding the terminology used by the trial court, it determined, after careful consideration of the section 5328(a) factors, that Custodian should have physical custody for a significant portion of time and Father should have physical custody of Child for a majority of the year. Thus, the terminology used by the trial court did not impact its award of shared physical custody to Custodian. Therefore, the trial court's legal error in characterizing the type of physical custody awarded to Custodian was harmless.

Appellants also challenge the award of shared legal custody to Custodian. We conclude that the trial court's decision is supported by the record and free of legal error. As noted by the trial court, Custodian "has taken primary responsibility for ensuring Child's safety and well-being, including such matters as enrolling Child in pre-school and ensuring that Child received needed immunizations." Trial Court Opinion, 7/24/15, at 12. Father, on the other hand, has undertaken none of these responsibilities. The trial court determined that having Custodian, who is familiar with Child's

needs, should share legal custody with Father to ensure that Child's needs are satisfied. Partial legal custody is not an option in Pennsylvania. *See* 23 Pa.C.S.A. § 5323(a). Instead, the trial court determined that shared legal custody was better for Child's best interest than awarding Father sole legal custody.

The trial court's decision to award Custodian shared legal custody is also supported by prior decisions of this Court. In *McDonel v. Sohn*, 762 A.2d 1101 (Pa. Super. 2000), third-party custodians were responsible for the care of the child for most of the child's life. *Id.* at 1103. The father was not involved in the child's life for an extended period of time until he opted to exercise partial physical custody of child. *Id.* When the third-party custodians filed suit to confirm custody, the father filed preliminary objections. The trial court ultimately overruled the preliminary objections and awarded the third-party custodians shared legal custody of the child. This Court affirmed the trial court's award of custody to the third-parties. Critical to this determination was the fact that the father had not been involved in the child's life for an extended period of time and that the third-party custodians had "historical involvement and participation in [the child's] life since birth." *Id.* at 1108. The same situation is present in the case at bar. Father was absent from Child's life for an extended period of time and only decided to take an active role in her life after the commencement of

this action. On the other hand, Custodian has assisted Child for most of her life.

Similarly, in **Jones v. Jones**, 884 A.2d 915, 918 (Pa. Super. 2005), this Court affirmed the award of shared legal custody to a third-party and the children's mother. Critical in our decision was the fact that the "children's relationship with both parties would be better fostered if custody were awarded to [the third-party]." **Id.** at 918. The trial court in the case *sub judice* likewise found that Father was attempting to exclude Custodian from Child's life while Custodian wanted to develop a bond between Child and Father. Therefore, based upon a careful review of the section 5328(a) factors, we ascertain no abuse of discretion in the trial court's determination to award Custodian shared legal custody. Accordingly, Appellant's first issue on appeal is without merit.

In their second issue, Appellants contend that the trial court erred by effectively ignoring Paternal Grandmother's petition for partial physical custody. Appellants acknowledge that the final custody order awards Paternal Grandmother partial physical custody as arranged with Father. They argue, however, that the order does not address Paternal Grandmother's rights, nor does it address Paternal Grandmother's petition for separate time with Child.

We find this issue waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

In her complaint, Paternal Grandmother only requested that Father be awarded primary physical custody of Child and that she be awarded "reasonable partial physical custody with [Child]." Paternal Grandmother Custody Complaint, 7/31/14, at 3. At the custody hearing, she elaborated that the only reason she filed her custody complaint was to speed up the process and assist Father in obtaining primary physical custody. *See* N.T., 2/5/15, at 150. She further testified that she did not want to take over parenting duties from Father. *Id.* As the trial court noted, the award of partial physical custody to Paternal Grandmother, to be arranged with Father, "essentially adopts Paternal Grandmother's proposal and honors Paternal Grandmother's expressed intentions and wishes to support Father's position and defer to his role in Child's life." Trial Court Opinion, 7/24/15, at 14. As Paternal Grandmother did not seek time in the custody schedule at the trial court level, this issue is waived on appeal.

Furthermore, even if this issue were not waived, we would find it to be without merit. Trial courts possess wide latitude in fashioning a custody schedule that is in a child's best interest. In this case, the trial court determined that minimizing changes in Child's custody, and having a steady schedule of custody for Father and Custodian, was in Child's best interest. Nonetheless, the trial court determined that Mother and Paternal Grandmother should also have partial physical custody of Child but believed

that time should be arranged through Custodian and Father, respectively. We ascertain no abuse of discretion or error of law in this determination.

In sum, the trial court carefully considered Child's best interest in fashioning its custody award and schedule. The trial court properly and thoroughly considered the presumption set forth in section 5327(b), and the 16 best interest factors set forth in section 5328(a). Although the trial court mischaracterized the type of physical custody it awarded Custodian, that error was harmless. Finally, Appellants waived their argument that Paternal Grandmother should have been included in the custody schedule instead of arranging her partial custody with Father. Accordingly, we modify the trial court's order to reflect that Custodian was awarded "shared" physical custody instead of "partial" physical custody. *See* 42 Pa.C.S.A. § 706 ("An appellate court may affirm, modify, vacate, set aside[,] or reverse any order brought before it for review[.]"). We affirm in all other respects.

Order affirmed as modified.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016