J-S44025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MEGAN MIMM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN MIMM | : | |
| | : | |
| Appellant | : | No. 1174 MDA 2022 |

Appeal from the Order Entered August 15, 2022
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2021-CV-02142-CU

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: MARCH 13, 2023**

Steven Mimm ("Father") appeals from the order granting primary physical custody of R.M. and E.M. (collectively "Children") to Megan Mimm ("Mother") and denying his petition for relocation and his petitions for contempt. Father also claims that the court erred in denying his motion for recusal and his requests to have Children evaluated by a professionally licensed psychologist and for a competency hearing for Children and that the court violated his due process rights. We affirm.

The trial court provided a detailed factual and procedural history, which we incorporate herein. Trial Court Opinion, filed Aug. 15, 2022, at 1-14 ("Custody Opinion"). We provide a summary of relevant procedural history.

---

[*] Retired Senior Judge assigned to the Superior Court.

Prior to February 2021, both parties resided in, and Children attended school in, Central Dauphin School District. In February 2021, Father relocated to Hershey, Pennsylvania, in Derry Township School District. In March 2021, Mother filed a Complaint in Custody. In May 2021, the court entered a custody order wherein the parties shared legal and physical custody on a 2-2-3 schedule. In July 2021, Father filed a petition for modification of custody. In August 2021, Mother filed an emergency petition for special relief and contempt in custody, alleging Father had enrolled Children in the Derry Township School District without her consent. The court granted the petition and ordered that Children be unenrolled from Derry Township School District and re-enrolled in Central Dauphin School District.

Father filed a petition for contempt, arguing Mother enrolled Children in a childcare program without his consent and "threatened to remove" and "attempted to remove" one of the children from a wrestling program. Petition for Contempt, filed Oct. 5, 2021, at ¶¶ 5-10. He filed a second petition for contempt arguing Mother had continued to enroll Children with a childcare provider, Amazing Sports, without his consent; ordered glasses for E.M. without Father's consent; enrolled R.M. in an after-school group instruction program without his consent; and failed to inform Father of E.M.'s disciplinary record. Second Petition for Contempt, filed Jan. 14, 2022, at ¶¶13-54.

In April 2022, the court held two days of hearings, where Father testified, Children testified *in camera*, and Mother completed her direct

- 2 -

testimony and part of her cross-examination.[1] The court scheduled a third hearing day for July 20, 2022. Father was counseled at the April hearings, but in May 2022 his counsel withdrew and he entered his appearance *pro se*.[2]

In May 2022, Father filed a petition for relocation following his move to Willow Grove, Pennsylvania in the Abington School District and moved for an expedited hearing. After phone conferences, the court issued an interim order where the parties shared physical custody of Children on a week on/week off basis, with custody exchanges occurring on Friday at 5:00 p.m. at a police station in Dauphin County. Father was to be responsible for the majority of transportation for all custody exchanges. Father filed a motion for reconsideration requesting a change in the time and location for custody exchanges.[3] The court granted the motion in part and ordered that the exchanges occur on Sunday at 5:00 p.m. It denied the request to change the location of the exchanges.

In June 2022, Father filed a motion for an evidentiary hearing outlining the case's procedural history and seeking an evidentiary hearing within the next five days. He argued that he "intend[ed] to introduce, among other things, emails and other records from Central Dauphin School District."

---

[1] The transcript from the first hearing day is not in the certified record. A copy is in the reproduced record, and no party disputes its accuracy. We may therefore consider it. **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

[2] Father is an attorney.

[3] Father also filed a notice of appeal, which he subsequently withdrew.

Defendant's Motion for an Evidentiary Hearing, filed June 9, 2022, at ¶ 27. He maintained any question of admissibility should be determined pretrial. *Id.* at ¶ 31. In the middle of the 209-paragraph motion, Father also stated that Mother's allegedly false claims of abuse she made to Children "call to the issue of whether [C]hildren are competent as witnesses, and this matter was not decided [p]re-[t]rial." *Id.* at ¶ 67a. The trial court denied the motion, stating that "it is unclear what exactly [Father] is requesting in [the] Motion." The court explained that an evidentiary hearing in the matter "ha[d] already been scheduled for July 20, 2022," and the motion did "not raise any exigent circumstances that would require [the court] to hold a hearing any sooner." Amended Interim Order, filed June 13, 2022.

Father then filed a motion for recusal arguing the Honorable Andrew H. Dowling (the "trial judge") could not be fair and impartial. Father maintained that in 2012, when Father was a criminal defense attorney, he had represented the trial judge's former wife at two dockets, which resulted in guilty pleas. Motion for Recusal, filed June 14, 2022, at ¶ 4. He claimed the relationship was having an impact on the current custody matter. *Id.* Father stated that he did not disclose the relationship sooner because he believed that "if [it] was an issue, the [trial judge] would have disclosed the prior representation" and he "believed it was in the interest of [the trial judge's former wife] to not be disclosed publicly." *Id.* at ¶¶ 5-6. He claimed the prior representation resulted in sided rulings, including a biased "preliminary determination" that was done off the record, a "punitive sanction . . . based

- 4 -

on [Father's] relocation," the denial of requests for an evidentiary hearing and for a conference to determine Children's competency. *Id.* at ¶¶ 7a-7d. He further noted the length of time between the filing of his motion for modification and contempt petitions and the issuance of the court's decision. *Id.* at ¶ 7e.

The trial court denied the motion to recuse. It pointed out that the case was assigned to the trial judge in December 2021, and it scheduled a pre-trial conference for January 27, 2022, which was rescheduled to February by request of the parties. Following the conference, the court scheduled the trial for April 20, 2022. It stated that "[b]oth prior to and during trial, counsel for [Mother] and [Father] repeatedly asked the [trial judge] if he would provide his impressions of the case up to that point after hearing testimony from both [Mother] and [Father]." Order, June 16, 2022. The trial judge "assumed that the parties wanted to utilize [his] impressions to facilitate a settlement between the parties." *Id.* Following the second day of trial, the trial judge "presented his impressions of how he would rule based on the testimony and evidence that had been presented up to that point," but "made clear that there was still evidence to be heard, and [the trial judge's] impressions could change." *Id.* The case did not settle and, based on the court's and the parties' schedules, a third date was set for July 20, 2022. The court also discussed the ruling addressing the proposed relocation, noting it held three conference calls to discuss the relocation and entered an interim order to address custody issues, including a custody schedule and summer activities. The court stated

that because Father had not obtained court approval prior to his move, it required Father to provide the majority of transportation for the exchanges. It pointed out that the parties remained with a 50/50 custody schedule and the court granted Father's motion for reconsideration in part and changed the custody exchanges to Sunday to accommodate Father's schedule. The court concluded that "the circumstances mentioned [in the motion for recusal] would not constitute circumstances under which the [trial judge's] impartiality might reasonably be questioned." *Id.*

In June 2022, Father also filed a motion for a telephonic conference where he requested a conference to discuss myriad evidentiary issues, including that the "record is totally devoid as to any discussion of the two minor children['s] competency to testify as witnesses, as they were directed to make false abuse claims by [Mother] against [Father]," and claimed that if Children were incompetent to testify, the finding should be made on the record. Defendant's Motion for Telephonic Conference, filed June 30, 2022, at ¶¶ 4g, i. The court held a telephonic conference, and it is unclear from the record whether the competency of Children was discussed.

In July 2022, the court held the final day of the hearing, with Father representing himself *pro se*. Father completed the cross-examination of Mother. Father's domestic partner Kathleen Shea also testified and Father testified again. Children did not testify. When the court asked whether Father agreed with Mother that Children should attend counseling, Father stated, "I believe that in order to determine their counseling need they should be

- 6 -

evaluated by a doctor of psychology who's – there's an individual who specializes in this, Kasey Shienvold. And we should have the kids properly evaluated prior to the Court rendering the final opinion on this issue." N.T., July 20, 2022, at 240, 246. He stated Children "have been through a trauma" and "have been forced to deal with" Children and Youth Services, which has affected their personalities. *Id.* at 247. He stated that Mother requested counseling and "what is counseling for if" there is not "mental health stuff going on." *Id.* He claimed Dr. Shienvold's reports are completed in about six weeks. *Id.*

Mother's counsel argued that there is "no indication that either child has any sort of mental health diagnosis at this point" and "[t]hey just need to have some counseling." *Id.* at 246. She stated Dr. Shienvold's reports take approximately one year. *Id.*

In addition, Father requested an additional day of testimony, so that he could call five witnesses from Central Dauphin School District. He stated that:

> Substantive nature of the testimony was specifically about the programming, the inconsistencies. It will demonstrate that [Mother] actually doesn't know – she, for example, like today, she doesn't know the teachers. She doesn't know how [the] test works. She doesn't know how the programs work. She couldn't tell you what the teachers specialize in or what they even do with the kids. This would just go further to show substantively that the things that she said are inaccurate. Based on her pleadings, based on her statements, she's testifying inaccurately and it's getting in almost as truth when in fact there's – that's why I brought the e-mails and I spent all the time – there's substantial amount of evidence that she actually is not participating in

their schooling in a meaningful way and she doesn't actually know what's going on.

*Id.* at 242-43.

Following the final hearing day of trial, the trial court entered an order that denied Father's request for an additional day of testimony to include five witnesses from Central Dauphin School District, reasoning the testimony was not relevant to the court's "determination as to what is in the best interests of the minor Children." Order, July 21, 2022. It further denied Father's request for an evaluation of Children by Kasey Shienvold, Psy.D., M.B.A., prior to entry of the decision. The court noted a "major issue in [the] matter is where the minor Children will attend school for the 2022-2023 school year," and that decision must be rendered before the school year starts. *Id.* Therefore, there was not sufficient time to set up, perform, and complete an evaluation. The court further stated that it did "not see any reason for such an evaluation based on the facts of this case." *Id.* The trial court also denied Father's request for a transcript prior to submitting a post-trial brief, noting the decision had to be rendered before the start of the school year. The court further ordered the parties to submit proposed custody orders within seven days.

On August 15, 2022, the court issued an order that the parties would share legal custody of Children and awarded Mother primary physical custody. It awarded partial physical custody to Father on alternating weekends during the school year, with extra days if Children had off on a Friday or Monday. It provided that Mother would have custody of Children from the release of school for winter break to 11:00 a.m. on December 26. It provided that Father

- 8 -

would have custody from 11:00 a.m. on December 26 through 7:00 p.m. the day before school starts. It ordered that during the summer Father would have two weeks of consecutive custody, and Mother would have one week of custody. The court also denied Father's petitions for contempt. The court issued an opinion in support of its orders. Father filed a timely notice of appeal.

Father raises the following issues:

> 1. Whether the trial court erred in failing to recuse itself where it harbored direct bias that bore on all of Appellant's claims?
>
> 2. Whether the trial court abused its discretion in entering the August 15, 2022, orders where it did not permit Appellant a full and fair opportunity to litigate the issues by failing to permit Appellant to call properly subpoenaed witnesses bearing on custody and relocation issues?
>
> 3. Whether the trial court abused its discretion in entering the August 15, 2022, orders by refusing [to] allow the minor children to be evaluated by a professionally licensed psychologist that specialized in custody and school choice matters and refusing to determine the minor children's (ages 9 and 11) competency as witnesses?
>
> 4. Whether the trial court abused its discretion in entering the August 15, 2022, orders when it entered a custody and relocation order that was not in the best interests of the children?
>
> 5. Whether the trial court abused its discretion in entering the August 15, 2022, orders when it improperly dismissed both of Appellant's motions for contempt after acknowledging that Appellee had engaged in the conduct alleged in the motions?

Father's Br. at 7.

In his first issue, Father argues that the trial judge erred in failing to recuse himself. Father maintains that he previously represented the trial

judge's former wife in criminal matters. Father argues that his representation of the trial judge's former wife "resulted in sided rulings" because the court made a "'preliminary determination' . . . while the case was mid-trial." *Id.* at 17. He claims this preliminary determination occurred before he presented a case-in-chief and while Mother was being cross-examined.[4] Father also maintains the trial judge issued a punitive sanction based on Father's relocation, without holding a hearing; denied his request for an evidentiary hearing; and required a subpoena for Central Dauphin staff members. Father also points out the court did not rule on the motion for modification for 311 days, the first contempt petition for 246 days, and the second petition for 112 days. Father maintains the court did not meaningfully respond to his motion to recuse.

Father further claims he "assisted in political matters which were adverse to the [trial judge's] personal interests, and [the trial judge's] son attended the school district at issue in the custody and relocation proceedings." *Id.* at 10. He claims the trial judge did not disclose that his son previously attended Central Dauphin School District and claims the judge's relationship with the school district created a bias. He further maintains the trial judge failed to disclose that in 2008, when the judge ran for the Court of Common Pleas, Father worked for judicial candidates who "possessed interests adverse to the [trial judge's]" interests. *Id.* at 20.  He maintains it

---

[4] We note that Father was the first person to testify at the April hearing.

would have been futile for him to raise these additional claims before the trial court.

This Court reviews the denial of a motion to recuse for an abuse of discretion. ***Bowman v. Rand Spear & Assocs., P.C.***, 234 A.3d 848, 862 (Pa.Super. 2020). "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record." ***Id.*** (quoting ***Lomas v. Kravitz***, 170 A.3d 380, 389 (Pa. 2017)).

A judge must recuse "wherever there is substantial doubt as to the jurist's ability to preside impartially." ***Id.*** (citation omitted). "[B]ecause the integrity of the judiciary is compromised by the appearance of impropriety, a jurist's recusal is necessary where [the judge's] behavior appears to be biased or prejudicial." ***Id.*** (citing ***Commonwealth v. Benchoff***, 700 A.2d 1289 (Pa.Super. 1997)). However, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." ***Id.*** (quoting ***Commonwealth v. Kearney***, 92 A.3d 51, 61 (Pa.Super. 2014)).

"[A] party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse." ***Lomas***, 170 A.3d at 390. "If the party fails to present a motion to

recuse at that time, then the party's recusal issue is time-barred and waived."

*Id.* (citations omitted).[5]

Father's alleged representation of the trial judge's former wife occurred in 2012. Therefore, he knew of this representation when the trial judge was assigned to the case in December 2021. He did not move for recusal until May 2022, after the court had held a two-day hearing and had scheduled a third day. In his motion for recusal, Father argued the trial judge should recuse based on Father's prior representation of the trial judge's former wife. He did not claim the court was biased because of Father's prior political work or because the trial judge's son previously attended Central Dauphin School District.

Father failed to seek recusal at the earliest possible moment, that is, when the trial judge was assigned to the case. He therefore waived the issue he raised in the motion and the additional issues raised on appeal. He claims there is an exception to waiver where it appears from the circumstances that a timely objection to judicial misconduct would be meaningless. Father's Br. at 15 (citing *Dennis v. Se. Pa. Transp. Auth.*, 833 A.2d 348, 352 n.2 (Pa.Cmwlth. 2003)).

The *Dennis* court relied *Commonwealth v. Hammer*, 494 A.2d 1054 (Pa. 1985), *abrogated on other grounds by Commonwealth v. Grant*, 813

---

[5] *See also Bowman*, 234 A.3d at 862 ("A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her.") (citation omitted).

A.2d 48 (Pa. 2002). In **Hammer**, the appellant claimed the court's conduct during trial was prejudicial. The Pennsylvania Supreme Court found that the claim was not waived even though the appellant had not lodged a timely objection. **Id.** at 1058. The Court reasoned that "[t]he role of the judge being inextricably intertwined with the dispensing of justice, it would be manifestly unjust to permit the embodiment of justice in the courtroom to thwart the criminal process without benefit of relief to the accused where the judge has crossed beyond the threshold of impartiality and where objection by counsel may be to no avail." **Id.** at 1060. In **Hammer**, the trial judge repeatedly interrupted defense counsel during his direct examination of the defendant and defense witnesses to ask prosecutorial-style questions, failed to rule on defense objections, and bolstered the Commonwealth's case with his comments and questions. **Id.** at 1060-64.

Here, Father knew the facts that supported the motion for recusal when the trial judge was assigned the case, and did not seek his recusal. The limited exception to the waiver doctrine applicable to cases of judicial bias is not relevant here. Father's complaints – that the court entered adverse rulings against him – do not amount to the kind of bias that would create a situation where it would be meaningless to object. **Cf. id.**

In his second issue, Father argues the court abused its discretion when it did not permit Father a full and fair opportunity to litigate his issues. Father maintains the court erred in failing to permit him to call properly subpoenaed witnesses. He claims this failure violated his right to due process. He argues

he was "stymied in his attempts to present documentary evidence establishing the allegations at the evidentiary hearing, and thus sought to call the properly subpoenaed creators of that documentary evidence." Father's Br. at 23. He claims the emails he sought to introduce were released under the Family Education Rights and Privacy Act and are business records exempt from the hearsay rule. He claims the witnesses would have "established [Mother's] course of alienation and inflammatory false statements regarding [Father] and his treatment of [Mother] and their children." *Id.* at 24.

"In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child." ***S.T. v. R.W.***, 192 A.3d 1155, 1161 (Pa.Super. 2018). "Due process must be afforded to parents to safeguard these constitutional rights." *Id.* The fundamental components of due process are "[f]ormal notice and an opportunity to be heard." *Id.* (quoting ***J.M. v. K.W.***, 164 A.3d 1260, 1268 (Pa.Super. 2017) (*en banc*)). "[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Id.* (quoting ***J.M. v. K.W.***, 164 A.3d 1260, 1269 n.5 (Pa.Super. 2017) (*en banc*)). "Due process is flexible and calls for such procedural protections as the situation demands." *Id.* (citation omitted).

Father maintains the court denied his due process rights because it did not admit emails from the school district and declined to hold an additional day of hearings to permit testimony from employees of the school district.

The trial court explained that the emails were inadmissible hearsay and the employees' testimony was not relevant. The court reasoned:

> During the Second Half of Trial, Father continually referenced his belief that Mother was alienating him from the teachers and principal at West Hanover Elementary School. Initially, it must be noted that this belief, regardless of its truth or untruth, has nothing to do with the best interests of the Children. One of the factors that we look at is whether one parent is attempting to alienate the other parent from <u>the Children</u>. It is irrelevant to a custody action whether one party is alienating the other party from people who are not the Children. As such, we refused Father's request to hear testimony from teachers and the principal at West Hanover Elementary School mainly because such testimony was irrelevant to our determination of what is in the best interests of the Children.
>
> Moreover, the points that Father was trying to make, i.e.[,] that Mother communicated with employees of the school without copying Father and that Mother made disparaging remarks about Father to school employees, were easily made by presenting Mother with emails that she had sent and having her acknowledge them and admit to sending them.[18] Mother's admissions made the testimony of the West Hanover teachers and the Principal redundant because they would have just confirmed what Mother admitted to. Thus, we found that testimony of the West Hanover teachers and Principal would have been irrelevant and unnecessarily cumulative, and it was proper to exclude such testimony.
>
> > [18] The emails from school employees to Mother were properly excluded based on hearsay. Regardless of whether these emails constitute school records that can be produced pursuant to a Right to Know request, that does not mean that they are automatically admissible as substantive evidence. Father kept claiming this at Trial, but he did not produce any case law or statutory authority that supported his argument.

Custody Opinion at 24-25 (emphasis in original).

- 15 -

Here, Father had notice of the custody hearing and a meaningful opportunity to present a defense. The court held three days of hearings, where Father, Mother, Shea, and Children testified, and Father was permitted to admit relevant evidence and engage in cross-examination. Father's claim that the court violated his due process rights by declining to admit testimony and evidence the court properly found irrelevant, redundant, and inadmissible lacks merit.[6]

In his third issue, Father argues the trial court abused its discretion by refusing to allow Children to be evaluated by a professionally licensed psychologist that specialized in custody and school choice matters and refusing to determine the competency of Children as witnesses. He maintains Mother tainted Children due to her "direction to fabricate allegations against [Father]." Father's Br. at 30. He claims Mother told Children to lie to counselors. He claims he requested a guardian *ad litem*, but the court denied the request. He points out that Shea testified that Mother was a compulsive liar. He argues that because there was evidence of taint, the court should have held a competency hearing. He maintains that "[Mother's] actions . . . resulted in deleterious psychological conditions for the children, and the court clearly erred in failing to conduct a competency hearing or have the children assessed by a licensed psychologist." ***Id.*** at 31-32.

---

[6] Father does not raise a challenge to the evidentiary ruling. Even if he did, we would conclude the court did not abuse its discretion.

- 16 -

This issue includes two separate sub-issues: whether the court erred in failing to conduct a competency hearing and whether it erred in denying Father's request to have Children undergo a psychological evaluation.

Father has waived his claim that the court should have held a competency hearing for Children due to alleged taint. Father has not identified where in the record the request for a conference to determine competency appears. We located a one-paragraph request in a June 2022 motion for a telephonic conference and a mention of competency in a June request for an evidentiary hearing. Those requests were after the Children had already testified, in April 2022. Because he did not raise his taint claim before the Children testified, he waived it. **See Commonwealth v. Gray**, 2021 WL 856169, at *5-6 (Pa.Super. Mar. 8, 2021) (finding party challenging competency of child witness must lodge objection to competency to preserve the error); Pa.R.E. 601, comment (providing determination of competency is "a factual question to be resolved by the court as a preliminary question under Rule 104" and "[t]he party challenging competency bears the burden of proving grounds of incompetency by clear and convincing evidence"). If Father claims he made an earlier request, it was incumbent on him to point us to the location in the record where we could find it. His failure to do so amounts to waiver of any such claim.

Father's challenge to the denial of his request for a psychological evaluation is also meritless. Father made the request on the last hearing day, in late July 2022. When the court asked whether Father agreed with Mother

that Children should attend counseling, Father stated he wanted Children to be evaluated by a doctor of psychology before the Court rendered its final opinion on the issue. N.T., July 20, 2022, at 240, 246.

Pennsylvania Rule of Civil Procedure 1915.8 governs mental examinations in custody proceedings and provides that the "court may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts" upon its own motion, the motion of a party, or by agreement of the parties. Pa.R.Civ.P. 1915.8(a). Whether to order an evaluation is within the trial court's discretion. *Jordan v. Jackson*, 876 A.2d 443, 455 (Pa.Super. 2005). We review the trial court's decision in this regard for an abuse of discretion. *Id.*

Here, the trial court denied Father's request for an evaluation because there was not enough time to conduct an evaluation and for the court to render a custody decision before the school year began. It explained that "[a] major issue in this matter is where the minor Children will attend school for the 2022-2023 school year. As such, a decision must be rendered before the school year starts." Order, July 21, 2022. The court pointed out there was not enough time to "set up, perform, and complete an evaluation before the school year starts." *Id.* Moreover, the court stated that it "d[id] not see any reason for such an evaluation based on the facts of th[e] case." *Id.*

The court did not abuse its discretion. There was not sufficient time to complete an evaluation prior to the issuance of the decision and it was not an

abuse of discretion to conclude the facts did not support a need for the evaluation.[7]

In his fourth issue, Father argues that the court abused its discretion because the custody and relocation order was, in Father's view, not in Children's best interest. He argues he and Shea traveled with Children and exposed them to educational excursions, were responsible for their educational enrichment, and provided healthcare and a wonderful home. He argues Children love Shea, who watched and tutored Children over the summer, he has Children in extracurricular activities, and he attended practices and matches. He argues Mother does not communicate with him, and when she does, she does not follow up. He claims Mother does not attend Children's activities and attempted to remove Children from wrestling.

_____

[7] The trial court found Father withdrew his request for a GAL:

> There was some testimony about Father requesting that a [GAL] be appointed for the Children. Specifically, Father introduced a letter dated May 26, 2021, wherein his counsel requested that a GAL be appointed for the Children. There is nothing in the record to show that a GAL was ever appointed. Father thereafter filed his Petition for Modification on July 30, 2021, but did not include a request for the appointment of a GAL in that Petition. A Conciliation was held on October 27, 2021. In the Conference Summary Report following the conciliation, the Conciliator notes that Mother requested a GAL and Father opposed the appointment of a GAL. Additionally, the possibility of appointing a GAL was raised by Mother at the First Half of Trial, but Father opposed the appointment at that time. As such, based on the record before us, Father requested a GAL in May 2021, but later withdrew his request.

Custody Opinion at 11-12.

Father further asserts that Mother fabricated criminal allegations against Father and instructed Children to make false allegations that he hit and spanked them and threw their toys. Father claims Mother "unilaterally signed [C]hildren up for the Amazing Sports program which was devoid of any educational or cultural significance," and continued to do so over his objection. Father's Br. at 39. Father maintains that if Children remain in Central Dauphin School District Mother "will continue to disrupt the school and [C]hildren's schooling." *Id.* at 40. He claims Mother engaged in alienation and slander of him to employees at the school and does not share information regarding Children with Father, and, although he has repeatedly requested to be included on all communications, the school does not do so. Father maintains Mother does not require Children to complete homework and she falsified forms, and claims Mother directed E.M. to wear bi-focals, which, he alleges were "wrongly prescribed." *Id.* at 42.

Father argues he moved to Hershey to provide Children with a better school district and because Mother allegedly spread "false allegations regarding [Father] and [C]hildren." *Id.* He claims he was forced to move from his Hershey residence by his landlord because his dog was barking. He argues that moving to the Abington School District positively affected Children. He states that the neighborhood is family-oriented and Children play with other

children in the neighborhood. He points out that his family is in the area, including close family members who work for the school district.[8]

We review a custody order for an abuse of discretion. **G.A. v. D.L.**, 72 A.3d 264, 268 (Pa.Super. 2013). We must accept a trial court's factual findings when the record supports them, and we defer to the trial court's credibility determinations. **Id.** We must determine "whether the trial court's conclusions are unreasonable as shown by the evidence of record." **Id.** (quoting **Collins**, 897 A.2d at 471). We will reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Id.** (quoting **Collins**, 897 A.2d at 471).

This Court consistently has held that:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

Father's issue challenges both the decision regarding custody and the denial of the relocation petition. The court did not abuse its discretion when awarding custody. The Child Custody Act requires a trial court to consider all

---

[8] He states that "[i]n the alternative, the court should have allowed for a 60/40 order which would not have totally and indefinitely excluded [Father] from any Christmas time with" Children. Father's Br. at 45.

of the Section 5328(a) factors when "ordering any form of custody." 23 Pa.C.S.A. § 5328(a). In child custody cases, the paramount concern "is the best interests of the child." *R.L. v. M.A.*, 209 A.3d 391, 395 (Pa.Super. 2019) (quoting *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018)). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* (quoting *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa.Super. 2017)). The custody factors to be considered include:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Here, the trial court considered all the custody factors before issuing its custody decision. Its reasoning included that:

- Father was verbally abusive toward Mother and individuals he interacted with related to Children and he was condescending toward Mother and the school teachers;

- Children need stability in their education and Father's living and work situations were not stable, noting Father had moved

residences in February 2021 and again in June 2022, shortly after testifying he planned to remain in the Derry School District until Children graduated high school;

- Father's extended family were close to his new home;

- Children did not express a strong preference toward either party;

- Father was "at least attempting to harm Mother's relationship with Children;"[9]

- Mother was more likely to provide a loving and nurturing relationship that is adequate to address Children's emotional needs;

- Mother attends to the educational needs of Children and the emotional needs;

- Father cooperates with Mother only when she agrees with him, but Mother seems willing to cooperate and when she disagrees she expresses valid concerns; and

- any alienation Father feels from school employees is "mainly a result of his actions and his communications" with the employees.

*See* Custody Opinion at 14-25.

The record supports the court's factual findings, and it did not abuse its discretion when awarding custody and, after reviewing the briefs, the certified record, and the well-reasoned opinion of the trial court, we affirm on the basis of the trial court's opinion.

The court also did not abuse its discretion in denying the petition for relocation. The Child Custody Act provides that when a custodial party seeks to relocate a child's residence, the party must petition the court, and the court must consider the relocation factors of Section 5337(h). 23 Pa.C.S.A. §

---

[9] The court found Father's and Shea's testimony that Mother was trying to manipulate Children to not be credible.

5337(h). Section 5337(h) provides that a court should apply the following factors to determine whether relocation would be in a child's best interest:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Here, the trial court reviewed all the relocation factors, and found relocation was not in Children's best interest. The court found:

- Children are used to spending half of their time with each parent, which is no longer possible;

- Children needed stability in their education; it was feasible to preserve the relationships of Children with both parents through a suitable custody schedule, with exchanges occurring at a half way point;

- there was a pattern on Father's part to harm Children's relationship with Mother;

- the relocation had an emotional benefit to Father, but was detrimental to him financially;

- it would be emotionally beneficial for Children to be closer to Father's extended family, but would not be emotionally or educationally beneficial for Children to start at a new school;

- Father's claim that he relocated because of "fear and protection" was not credible, and although it may be in Father's best interest to relocate, it does not mean it is in Children's best interest.

*See* Custody Opinion at 25-28.

The court did not abuse its discretion, and, after a review of the briefs, the certified record, and the trial court opinion, we affirm on the basis of the trial court's opinion.

In his final issue, Father argues the court abused its discretion in entering the orders denying his petitions for contempt. He claims Mother violated the May 2021 custody order by signing Children up for Amazing Sports without his consent and by "threatening and attempting to remove R.M. from the wrestling program." Father's Br. at 48. He argues Mother's claim

she did not want Children to wrestle because of COVID was pretextual and disingenuous because Children were in other situations where they could potentially contract COVID. Father claims Mother wanted to pull them from wrestling because he suggested the activity. He further maintains that Mother signed R.M. up for a second extended day program at school where the program did not address his fluency concerns. Father claims Mother failed to inform him of disciplinary forms, noting the trial court found Mother should have informed Father of the form but declined to hold Mother in contempt for failing to do so. He also maintains the court held Mother wrongly ordered glasses over Father's objection.

We review a civil contempt order for an abuse of discretion. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009) (citing *Hopkins v. Byes*, 954 A.2d 654, 655–56 (Pa.Super. 2008)). A trial court abuses its discretion only if "it misapplies the law or exercises its discretion in a manner lacking reason." *Id.* (citation omitted). Further, we defer to the trial court's credibility determinations where they are supported by the record, "as that court has had the opportunity to observe [the witnesses'] demeanor." *Id.* at 1236 (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super. 2001)).

To be in civil contempt, a party must have violated a court order, and the complaining party must prove that the party did so, by a preponderance of the evidence. *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa.Super. 2017) (*en banc*). A party seeking a finding of contempt must establish: "(1) that the contemnor had notice of the specific order or decree which he is alleged to

have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***Id.*** (quoting ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 n.7 (Pa.Super. 2012)).

The trial court found Mother did not violate the court order when she enrolled Children in Amazing Sports during her custody time or when she voiced opposition to signing Children up for wrestling due to concerns of COVID exposure. It found Mother should not have signed R.M. up for the second after school program, but that she did not do so with wrongful intent, and she withdrew R.M. from the program after Father objected. It found that Mother should have provided Father with the disciplinary form, but that it was not a violation of the custody order because it was a day-to-day decision and, further, it was not contempt because there was no wrongful intent. The court further found that both parents acted badly with respect to the eyeglasses and found Mother should not have ordered the glasses over Father's objection, but that she did not have the requisite wrongful intent. It therefore denied the contempt petitions. After a review of the briefs, the certified record, and the well-reasoned trial court opinion, we conclude the court did not abuse its discretion and affirm on the basis of the trial court's opinion. Custody Opinion at 29-34.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/13/2023</u>